Don Bivens (AZ Bar No. 005134)
**DON BIVENS, PLLC**
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 762-2661
Email: don@donbivens.com

Gregory Y. Porter, *PHV* to be filed
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: gporter@baileyglasser.com

[additional counsel listed below]

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| Jeffrey J. Hancock, on behalf of the Suntec Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Miguel Paredes; Prudent Fiduciary Services, LLC; Derek F. Wright; Jerome P. Barnier, Jr.; Jeremiah Hood; Matthew Rogers; Jose L. Lopez; Jorge Martinez; and David Bradley,<br><br>Defendants. | No. ________________<br><br>**COMPLAINT** |

Plaintiff Jeffrey J. Hancock, by his undersigned attorneys, on behalf of the Suntec Employee Stock Ownership Plan and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiff Jeffrey J. Hancock ("Plaintiff") brings this suit against Miguel Paredes and his operating company Prudent Fiduciary Services, LLC ("PFS," and together with Paredes, "the Trustee"), who served as the fiduciary trustee for the Suntec Employee Stock Ownership Plan (the "Plan" or the "ESOP") at the time the Plan acquired shares of Suntec Holdings, Inc. ("Suntec" or the "Company") in 2024; Derek F. Wright, Jerome P. Barnier, Jr., Jeremiah Hood, Matthew Rogers, Jose L. Lopez, and Jorge Martinez (collectively, the "Seller Defendants"), parties in interest to the Plan from whom the Plan acquired Suntec stock (and/or from trusts or other entities owned directly or indirectly or controlled or held by them or of which they held a beneficial interest); and David Bradley and the Seller Defendants (Bradley together with the Seller Defendants, the "Board Defendants"), who were members of the Board of Directors of Suntec and Suntec Concrete, Inc. ("Suntec Concrete"), Suntec's predecessor and after Suntec's

incorporation its primary operating company, in the relevant period prior to and at the time of the 2024 stock purchase transaction.

2. Plaintiff is a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan who was vested in shares of Suntec allocated to his account in the Plan.

3. This action is brought under Sections 404, 405, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when it caused the Plan to engage in ERISA prohibited transactions in connection with its leveraged purchase of Suntec stock from the Seller Defendants and other selling shareholders, and other plan-wide relief. Specifically, the Trustee caused the Plan to engage in prohibited transactions under ERISA Section 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D), when it caused the Plan to purchase Company stock from the selling shareholders and transfer assets of the Plan to them, and financed that purchase with a loan from the Company. The Seller Defendants, as counterparties to the stock transaction, and as directors, officers, employees and shareholders of Suntec and Suntec Concrete, were knowing participants in the prohibited stock purchase transaction. The Board Defendants breached their

fiduciary duties under ERISA Sections 404(a)(1) and 405(a), 29 U.S.C. §§ 1104(a)(1) and 1105(a), in connection with the prohibited transactions.

4. As alleged below, the Plan, Plaintiff, and all Plan participants have been injured and participants deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5. At all relevant times, Suntec was a closely held private company, the Plan's sponsor, and a party in interest to the Plan. Suntec established the Plan to be retroactively effective as of January 1, 2023.

6. On February 15, 2024, the Plan, through its trust, purchased from party in interest selling shareholders, including the Seller Defendants, directly or indirectly, 637,500 shares of the Company's common stock for $303,373,872. The ESOP financed the entire purchase with a loan from the Company (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction").

7. The Trustee represented the Plan and its participants as fiduciary trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf. The stock and loan transactions that the Trustee caused the Plan to enter into with parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), were prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

8. The Seller Defendants sold shares in the ESOP Transaction, either directly or indirectly. Prior to and at the time of the February 15, 2024 ESOP Transaction, the Board Defendants (which include the Seller Defendants and Defendant Bradley) were the directors and senior officers of Suntec and Suntec Concrete.

9. Throughout the 2023 to 2024 process of creating the ESOP, appointing its trustee, creating the Suntec holding company, and preparing and closing the ESOP Transaction, the Board Defendants were the senior leadership of Suntec and Suntec Concrete, whose employees are and were covered by the Plan. They were centrally involved in conceiving of, facilitating, and executing the Transaction and had access to and knowledge of company financials and projections, Company control features before and after the Transaction, the Suntec Articles of Incorporation adopted less than a month before the Transaction, the instruments governing the ESOP, the ESOP Transaction contracts, and other Company information. The Seller Defendants are liable under ERISA for knowingly participating in the prohibited stock transaction. The Board Defendants are liable for breaching fiduciary and co-fiduciary duties.

10. The ESOP paid more than fair market value for Suntec stock for several reasons, as detailed below. Among other things, the Trustee and its financial advisor caused the ESOP to pay a control value even though the ESOP

did not obtain control of Suntec. The Trustee and its advisor applied a discount for lack of marketability premised on the ESOP obtaining put rights that it did not receive, as put rights ran to participants and not to the buyer ESOP. And the Trustee and its financial advisor did not properly account for the Board's authority to issue Suntec stock to persons other than the ESOP, or for grants of synthetic equity, which had a dilutive impact on the ESOP's equity. These valuation errors caused the ESOP to pay tens of millions of dollars in excess of fair market value.

11. Through this action, Plaintiff seeks to enforce his rights and the rights of the Class members (defined below) under ERISA and the Plan. Specifically, Plaintiff seeks, in the alternative, to recover the losses incurred by the Plan and the improper profits realized by Defendants resulting from their causing prohibited transactions and knowingly participating in the prohibited transactions, and from breaching their fiduciary duties, and equitable relief, including reformation of Transaction contracts, and removal of the Trustee as a fiduciary and enjoinment of it from acting as a fiduciary for any employee benefit plan that covers or includes any Suntec employees or members of the Class. Plaintiff requests that Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge to the Plan any improper profits, that these prohibited transactions be declared void, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

12. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), to require Defendants to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries, parties in interest, or others through the receipt or use of Plan assets in violation of ERISA, and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

13. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and it has original jurisdiction pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan is administered in Phoenix, Arizona.

## PARTIES

15. **Plaintiff Jeffrey J. Hancock** is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since September 5, 2023. Plaintiff

resides in Tonopah, Arizona. He was employed at Suntec Concrete from June 19, 2014 to December 20, 2022, and from September 5, 2023 to March 19, 2025, most recently as an Equipment Manager. At the time he left employment at Suntec, he was 100% vested in shares of Suntec in his ESOP account.

16. **Defendant Miguel Paredes** is and was at the time of the ESOP Transaction the President, founder, and owner of PFS. His business address is Prudent Fiduciary Services, LLC, 100 N. Barranca St., Suite 400, West Covina, California 91791.

17. **Defendant Prudent Fiduciary Services, LLC** ("PFS") is a California Limited Liability Company. It is a provider of ESOP trustee and ERISA compliance consulting services related to employee benefit plans such as qualified retirement plans. Its headquarters is at 100 N. Barranca St., Suite 400, West Covina, California 91791.

18. Paredes and PFS were the Trustee of the Plan at the time of the ESOP Transaction. The Trustee had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan and its trust. PFS was at all relevant times Paredes's operating company. PFS acted in the ESOP Transaction through Paredes. Paredes and PFS are, and have held themselves out as, essentially one and the same with regard to the ESOP trustee services they provide. PFS provides a team of approximately fifteen full-time individuals to execute ESOP

transactions, including an in-house business appraiser, a routine due diligence process, office space, and insurance. Plan sponsors' retainers are payable to PFS for the ESOP trustee services Paredes and PFS provide.

19. At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

20. As Plan trustee, and as shown in the Plan's Summary Plan Description (SPD), which identifies it as a fiduciary and having fiduciary duties and responsibilities, the Trustee was a Named Fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

21. **Defendant Derek F. Wright** was prior to and at the time of the ESOP Transaction the Chairman of the Board of Directors, a Director, and the President and Chief Executive Officer (CEO) of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director and officer. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District.

22. Defendant Wright was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

23. Defendant Wright was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director, officer, and employee of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director and officer; and/or as a 10 percent or more shareholder, directly or indirectly, of Suntec. Wright was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

24. **Defendant Jerome P. Barnier, Jr.** was prior to and at the time of the ESOP Transaction a Director of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director. He was the founder of the Suntec family of companies in 1984 and was the founder of Suntec Concrete in 1997. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District.

25. Defendant Barnier was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

26. Defendant Barnier was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director; and/or as a 10 percent or more shareholder, directly or indirectly, of Suntec. Barnier was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

27. **Defendant Jeremiah Hood** was prior to and at the time of the ESOP Transaction a Director and the Chief Financial Officer (CFO) of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director and officer. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District.

28. Defendant Hood was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction

because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

29. Defendant Hood was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director, officer, and employee of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director and officer. Hood was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

30. **Defendant Matthew Rogers** was prior to and at the time of the ESOP Transaction a Director and a Vice President of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director and officer. He was a selling shareholder in the ESOP Transaction, directly or indirectly.

31. Defendant Rogers was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the

Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

32. Defendant Rogers was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director, officer, and employee of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director and officer. Rogers was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

33. **Defendant Jose L. Lopez** was prior to and at the time of the ESOP Transaction a Director and the Operations Manager - Colorado of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director and officer. He was a selling shareholder in the ESOP Transaction, directly or indirectly.

34. Defendant Lopez was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

35. Defendant Lopez was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director, officer, and employee of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director and officer. Lopez was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

36. **Defendant Jorge Martinez** was prior to and at the time of the ESOP Transaction a Director and a Vice President of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director and officer. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District.

37. Defendant Martinez was a fiduciary with respect to the Plan at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries. On information and belief, Martinez was appointed to the Board subsequent to the Trustee's appointment as the ESOP's transaction trustee and six weeks before the ESOP Transaction. While a director, he bore a duty to monitor current fiduciaries appointed by the Board prior to and after his appointment as a director, including the ESOP Trustee.

38. Defendant Martinez was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director, officer, and employee of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a director and officer. Martinez was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

39. **Defendant David Bradley** was prior to and at the time of the ESOP Transaction a Director of Suntec and Suntec Concrete or an individual having powers or responsibilities similar to those of a director.

40. Defendant Bradley was a fiduciary with respect to the Plan at the time the ESOP's Trustee was appointed and at the time of the ESOP Transaction because he served on the Suntec and Suntec Concrete Board of Directors and because Suntec is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee.

41. Defendant Bradley was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), prior to and at the time of the ESOP Transaction as a director of Suntec and Suntec Concrete, whose employees were covered by the Plan, and/or as a person with powers or responsibilities similar to those of a

director. Bradley was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

## FACTUAL ALLEGATIONS

**Suntec and the Suntec Family of Companies**

42. Headquartered in Phoenix, Arizona, Suntec bills itself as specializing in being a turnkey specialty concrete contractor on large-scale projects covering all aspects of the construction industry. The Suntec family of companies was founded in 1984 by Defendant Jerome P. Barnier, Jr. with Suntec Concrete Constructors, which was dissolved in 2016. At the time of the ESOP Transaction, Suntec had nearly 2,000 employees in Arizona, Colorado, Utah, and Idaho.

43. Suntec Concrete, founded by Defendant Jerome P. Barnier, Jr., was incorporated in Arizona on March 31, 1997. Suntec Concrete was the immediate predecessor of Suntec and became Suntec's primary operating company around the time of Suntec's incorporation in December 2023. Suntec Concrete's address is: 23751 N. 23rd Avenue, Suite 175, Phoenix, Arizona 85085.

44. Suntec, a holding company, was incorporated in Arizona on December 21, 2023 – eight weeks before the ESOP Transaction. The Plan's 2024 Form 5500 Annual Return/Report of Employee Benefit Plan, filed on October 14, 2025, reports that Suntec's address, in its capacities as Plan Sponsor and Plan Administrator, is: 23751 N. 23rd Avenue, Suite 175, Phoenix, Arizona 85085.

45. In addition to owning shares of Suntec Concrete, Suntec owns a 20% or greater interest in the capital or profits of Suntec Engineering and Design, LLC ("Suntec Engineering"), an Arizona limited liability company founded on March 21, 2024. Suntec Engineering's address is: 23751 N. 23rd Avenue, Suite 175, Phoenix, Arizona 85085.

46. J.Q. Higgins Trust also owns a 20% or greater interest in the capital or profits of Suntec Engineering. Like Suntec, Suntec Concrete, and Suntec Engineering, J.Q. Higgins Trust's address is: 23751 N. 23rd Avenue, Suite 175, Phoenix, Arizona 85085.

47. Suntec established the Plan with a retroactive effective date of January 1, 2023.

48. Suntec Concrete is an affiliated employer that, with Suntec, has adopted the Plan.

49. Qualifying employees of Suntec and Suntec Concrete, and any other affiliated employers who have adopted the Plan, are covered by the Plan.

50. Suntec is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

51. As disclosed in the Plan's 2024 Form 5500 and its SPD, Suntec is and was from the inception of the Plan the Plan Administrator, within the meaning of

ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). As the Plan Administrator, Suntec is responsible for the day-to-day administration and operation of the Plan.

52. Suntec is a Named Fiduciary of the Plan, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

53. Suntec is and was an ERISA fiduciary to the Plan at all relevant times because it is a Named Fiduciary; it is the Plan Administrator; and it possesses and exercised through the Board of Directors the fiduciary power to appoint and remove other Plan fiduciaries, including the ESOP's Trustee.

54. As a Plan fiduciary, and an employer whose employees are covered by the Plan, Suntec is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

55. The Plan's 2024 Form 5500 identifies Suntec as a party in interest to the Plan at the Schedule H, Line 4(i) Schedule of Assets Held At End of Year. Note 7 to the Financial Statements further states: "Parties-in-interest are defined under DOL regulations as any fiduciary of the Plan, any party rendering services to the Plan, the employer, and certain others."

**The Plan and the ESOP Transaction**

56. The Plan is a pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1),

29 U.S.C. § 1003(a)(1). It is a defined contribution plan and an individual account plan, within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), under which a separate individual account is maintained for each participant.

57. The Plan is designed and operates as an employee stock ownership plan (ESOP) within the meaning of Internal Revenue Code Section 4975(e)(7) and Section 407(d)(6) of ERISA, 29 U.S.C. § 1107(d)(6). The Plan was designed to invest primarily in the employer securities of Suntec. The Plan's principal asset was Suntec stock at all times since the ESOP Transaction. Suntec stock is not and never was readily tradeable on an established securities market.

58. On February 15, 2024, the Plan, through its trust, purchased from selling shareholders, including the Seller Defendants, directly or indirectly, 637,500 shares of the Company's common stock for $ 303,373,872.

59. The ESOP financed the purchase with a loan from Suntec. The term loan agreement with the Company provides all outstanding principal and accrued interest thereon are due in full by December 31, 2058.

60. The Notes to Financial Statements to the Plan's 2024 Form 5500 state: "The Plan invests in Company stock, which is considered a related party and party-in-interest transaction."

61. After the ESOP Transaction, Suntec represented that it is "an employee-owned firm." Thus, as a result of the ESOP Transaction, the Plan and

the participants who participate in it became owners of all the issued shares of Suntec common stock, with the Plan's trust being the legal shareholder and participants having beneficial interests.

62. The Plan's SPD informs Suntec employees: "The purpose of the Plan is to enable you to participate in the growth and prosperity of the Company by making you a beneficial owner of common stock of the Company."

63. Though the Plan purchased the Suntec stock on February 15, 2024, and established the ESOP effective as of January 1, 2023, it was not until March 16, 2024, that Suntec leadership announced the establishment of the ESOP to the "entire team" of Suntec employees at a company gathering at Grand Canyon University. During that meeting, Defendant Wright told the Suntec team: "Effective February 15th, about four weeks ago, Suntec became a 100% employee-owned company."

64. Rank and file employees of Suntec and participants in the Suntec ESOP, including Plaintiff, did not participate in the development, negotiation, or closing of the ESOP Transaction. Nor have they been provided details about the ESOP Transaction or provided with documents that memorialized the Transaction. As a result, many of the specific details of the ESOP Transaction are "in the exclusive possession of the breaching [Defendants.]" *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("the circumstances surrounding alleged breaches of

fiduciary duty may frequently defy particularized identification at the pleading stage"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.").

**The Buyer-Side ESOP's Fiduciary Trustee**

65. Suntec, by its Board of Directors, and by the Suntec Concrete Board of Directors to the extent it acted prior to Suntec's formation, appointed the Trustee as the ESOP's transaction trustee prior to the ESOP Transaction when the selling shareholders, including the Seller Defendants, owned and controlled Suntec and Suntec Concrete. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Suntec stock. Therefore, the Seller Defendants as directors (except, on information and belief, Defendant Martinez as explained above)—the seller-side in the ESOP Transaction—appointed the buyer-side counter-party trustee in the Transaction. An unconflicted independent fiduciary did not make the appointment.

66. The Trustee received fees from Suntec for its services as transaction trustee in the ESOP Transaction to the buyer-side Plan under a contract made prior to the selling shareholders' sale of Suntec stock to the Plan, while the selling

shareholders still owned Suntec and Suntec Concrete. The Trustee also received fees after the ESOP Transaction because it was appointed ongoing trustee to the Plan to serve following the closing of the Transaction.

67. The Trustee relied on Stout Risius Ross, Inc. ("SRR"), an appraiser, as its financial advisor in the ESOP Transaction. However, courts have faulted ESOP trustees for relying on SRR's work in ESOP transactions. *See Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019) (affirming $29,773,250 judgment against ESOP trustee).

68. With regard to the ESOP transactions he has engaged in as a trustee, Defendant Paredes has stated that "the overall majority of those have a warrant component." Likewise, he said stock appreciation rights (SARs) are "almost identical to a warrant"; he views them "in a very positive light" and "they're great tools"; and they are "very commonplace when we're implementing an ESOP."

**CSG Partners – The Seller-Side ESOP Advisor**

69. CSG Partners, Inc. ("CSG")—a New York "ESOP investment bank" whose services include "quarterbacking leveraged ESOP transactions" and "building employee stock ownership plans" according to its marketing materials—advised Suntec and the selling shareholders in the ESOP Transaction.

70. CSG describes its role in ESOP transactions to include: "Select fiduciary to represent employees." Here, the fiduciary selected to represent Suntec employees was the Trustee.

71. Among other things, CSG's role was to select the buyer-side ESOP trustee for the Board Defendants to appoint to purportedly represent the ESOP and its participants. CSG also ensured corporate and plan governance control was retained by the Seller Defendants so they did not lose control to employees in the ESOP Transaction.

72. CSG marketing materials say it structures ESOP transactions such that selling shareholders will "maintain control" of the company, "exercising control through the Board of Directors and other corporate governance tools," even where the company is "100% owned by the ESOP." CSG explains how control may be maintained: "In 100% ESOPs, Company is run by Board of Directors" and "Selling shareholders nominate Board of Directors and control it."

73. Further, CSG's ESOP transactions include a "synthetic equity plan (including warrants and/or stock appreciation rights)." CSG promises: "Even when a business is 100% employee-owned, synthetic equity can be created as part of an ESOP transaction and either gifted or sold to family members."

74. CSG's ESOP transactions may be structured such that warrants are created "alongside the sale of stock to an employee stock ownership trust,"

enabling selling shareholders and any members of a management team who are gifted or purchase the selling shareholders' warrants to "take a meaningful stake in the company, beyond standard ESOP allocations." "Even in 100% Sale Transactions, CSG clients often retain significant ownership" through synthetic equity.

75. The U.S. District Court for the Eastern District of Virginia decided a case with same kind of transaction (a leveraged ESOP transaction); same seller advisor (CSG); and same valuation advisor to the trustee (SRR). *See Brundle v. Wilmington Trust N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019). The *Brundle* court found that the ESOP community is very "incestuous" and SRR's "excessive familiarity" with CSG was readily apparent, where CSG could observe SRR's valuation methods, and SRR even shared its "valuation strategies" at a "very granular level" with CSG while SRR was advising the trustee on the acquisition of company stock. *Id.* at 643.

**The Plan was Injured by its Overpayment for Company Stock in the ESOP Transaction**

76. The Board Defendants were centrally involved in conceiving, facilitating, and executing the Transaction, including conducting a process for ownership transition from the selling shareholders to an ESOP rather than to an outside buyer; hiring and working with Transaction advisors for Suntec and the

selling shareholders; hiring a compliant Trustee to nominally represent the counter-party Plan; creating Suntec and making Suntec Concrete its operating company; directing the preparation of financial projections by Suntec's management and staff, including Defendant CFO Hood and Defendant CEO Wright, for use in valuations in the Transaction; and approving Suntec's lending of over $300 million to the ESOP's trust in the leveraged transaction.

77. The Seller Defendants and other selling shareholders retained control of the Board of Directors after the ESOP Transaction as a result of their positions as directors and officers; through employees, appointees, nominees, and/or proxies holding positions as directors and/or officers; through a compliant Trustee that could be fired by the Board of Directors, making any alleged ESOP control illusory; due to the rights arising from synthetic equity issued to them and any debt they held from the ESOP Transaction; and through various transaction documents, including the stock purchase agreement and the synthetic equity plan (including warrants and/or stock appreciation rights).

78. Since the time of the ESOP Transaction, Suntec has been under the control of the selling shareholders, particularly by and through Defendant Wright, who at all relevant times prior to and at the time of the ESOP Transaction, and to the present, is and has been the Chairman of the Suntec/Suntec Concrete Board of Directors and the President and CEO. To early 2026, the Board of Directors

consisted of a majority of selling shareholders, which at times included selling shareholders not named as defendants including Guillermo Valdez and Todd Breuer. At no times have outside directors constituted a majority of the Board, and the outside directors appointed have been allowed by selling shareholders and particularly Defendant Wright through governance processes made under CSG's instruction, such as nomination by Wright and his compatriots, and a compliant ESOP Trustee.

79. The design of the ESOP Transaction and Company control features denied the Plan the control it should have received for its $300 million purchase.

80. The incumbents' retention of control was intended and publicized, as Suntec disclosed in releases in March 2024 that the ESOP "ensures the company leadership structure will remain the same."

81. The Trustee valued the Suntec stock on a control basis by using an industry capital structure instead of the Company's actual capital structure in its income method, which yielded a control value. But the Plan did not obtain control of the Company, as explained above, because the selling shareholders maintained control over the Board and, through the Board, Suntec. The Plan should have received a discount for lack of control, but it did not. This means the Plan paid more than fair market value for the stock.

82. The Trustee failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation in the ESOP Transaction because it failed to sufficiently account for the lack of marketability for the private stock that was purchased by the ESOP's trust. The valuation applied an insufficient DLOM because Plan participants, beneficial owners rather than legal owners, have a right to have the Company buy any shares of Suntec stock distributed to participants that is not publicly traded (the Put Option). But the ESOP trust was the purchaser in the ESOP Transaction and participants' sales to the Company (or to the ESOP trust itself) do not reduce the lack of marketability to the trust of the stock the trust owns. In other words, the ESOP's acquisition price was for more than fair market value because the DLOM applied in the transaction was premised on put rights that did not run to the buyer. In addition, the Plan's lack of control over Suntec made it lack marketability.

83. Note 1 of the Financial Statements to the Plan's 2024 Form 5500 states: "The purpose of the put option is to ensure that the participant has the ability to ultimately obtain cash." The Put Option benefits participants, providing them liquidity, and does not reduce the lack of marketability to the ESOP trust.

84. The Plan overpaid for Suntec stock in the Transaction due to the Trustee's improper application of DLOM of 5%. Restricted stock studies and other data sources indicate the DLOM should have been at least 10%, if not more.

Applying a modest DLOM of 10% by itself means the ESOP paid approximately $30 million more than fair market value.

85. In determining the value of private company stock, the fair market value standard is the price at which the stock would change hands between a hypothetical willing buyer and a hypothetical willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all relevant facts. Adequate consideration for an ESOP transaction is governed by reasonably knowledgeable, hypothetical buyers and sellers rather than tailoring a "hypothetical" buyer to a particular buyer like an ESOP trustee. Reducing the DLOM based on the Put Option was therefore improper because the value was based on the specific buyer, an ESOP.

86. Suntec is authorized to issue 1,510,000 shares of stock, of which 1,500,000 are designated Common Stock and 10,000 shares are designated Non-Voting Common Stock.

87. The Board Defendants gave themselves nearly unfettered authority to issue Suntec shares after the ESOP Transaction that could dilute the ESOP's interest in the Company, to the detriment of the ESOP and to the benefit of persons other than the ESOP. Suntec's Articles of Incorporation, executed on December 20, 2023, states: "Shares of the Corporation's stock may be issued upon such terms and conditions as shall be prescribed by the Board of Directors of the Corporation

and may be issued in exchange for cash, services or anything of present right or value, but not for a promissory note. The judgment of the Board of Directors as to the value of property or services taken in exchange for stock, as to the determination of cash reserves and operating capital and as to the value of consideration received from time to time for the sale of stock, shall be conclusive in the absence of fraud."

88. While the ESOP purchased 637,500 shares of the Company's common stock for $ 303,373,872 on February 15, 2024, and Suntec told employees it was a 100% employee-owned company, by October 2025, 850,000 shares had been issued. On information and belief, this issuance of an additional 212,500 shares had a dilutive impact on the ESOP's equity.

89. A rational buyer under no compulsion to purchase Suntec under terms like these (*i.e.*, a Board controlled by selling shareholders, who could dilute the value of all Suntec stock by issuing stock to themselves, other selling shareholders, and other persons) would not have purchased the Company stock that the ESOP was forced to purchase, or would have demanded a significant discount in the price of the stock to account for these defects of ownership.

90. Synthetic equity may include, *inter alia*, warrants, stock options, restricted stock, a deferred insurance stock right, a stock appreciation right (SAR) payable in stock, or similar interest or right that gives the holder the right to

acquire or receive stock of a corporation in the future, a right to a future payment (payable in cash or any other form other than stock of the corporation) from a corporation that is based on the value of the stock of the corporation, such as a stock appreciation right that is payable in cash or phantom stock unit with respect to stock of the corporation, or other forms of nonqualified deferred compensation.

91. As described above, the Trustee and CSG advocate the use of synthetic equity in connection with ESOPs, and their use is a feature of ESOP transactions to which they are service providers.

92. Synthetic equity is usually granted to high level executives by the board of directors. Here, the Seller Defendants and other selling shareholders were high-level officers or directors at the time of the ESOP Transaction and after. The Seller Defendants and other selling shareholders received synthetic equity in, or thereafter as allowed in, the ESOP Transaction.

93. When synthetic equity is granted, it dilutes the value of company shares held by ESOP participants and transfers that value to those persons holding the synthetic equity. Thus, when synthetic equity is granted, it reduces the value of the Suntec shares owned by the Plan. This either harms the economic interest of Plan participants or, if the synthetic equity is not properly taken into account in the valuation of Suntec stock, the stock is reported at inflated values.

94. A rational buyer under no compulsion to purchase Suntec under terms like these (*i.e.*, a Board controlled by certain selling shareholders, who could dilute the value of all Suntec stock by granting synthetic equity to themselves, other selling shareholders, and other persons) would not have purchased the Company stock that the ESOP was forced to purchase, or would have demanded a significant discount in the price of the stock to account for these defects of ownership.

95. The Plan overpaid for Suntec, and the Seller Defendants received improper profits, as a result of synthetic equity issued to the Seller Defendants. A rational buyer under no compulsion to purchase Suntec would not have agreed to the synthetic equity upon its purchase of Suntec stock.

96. The valuation process undertaken by the Trustee and its financial advisor SRR was flawed. The stock appraisal upon which it relied was based on unrealistic and inflated projections of Suntec's future cash flows and earnings.

97. The Trustee's appraisal of Suntec stock in the ESOP Transaction was based upon a combination of the market and income valuation approaches. Suntec management provided data from historical and projected financial information of the Company to the Trustee for the valuation of Company stock in the ESOP Transaction. Forecasts prepared by Suntec management were used in the valuation methodology employed by the Trustee and its financial advisor. The projections were prepared by Defendants Hood and Wright, who were conflicted because they

would receive a large payout from the ESOP Transaction and synthetic equity and had the authority, through the Board, to award themselves shares of stock and synthetic equity. The projections were overly optimistic, leading the Trustee to cause the ESOP to overpay for Suntec stock.

98. The Trustee's and SRR's methods deviated from sound business practices employed by non-ESOP buyers in the so-called "real world" and required by ERISA. In accordance with their and ESOP "industry" routine practices, the Trustee's and SRR's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The "incestuous" nature of the ESOP community, SRR's "excessive familiarity" with CSG, and CSG's selecting the Trustee to represent the ESOP and Suntec employees who were ostensibly on the other side of the Transaction, led to the Trustee's failure to negotiate for a fair market value purchase price for Suntec stock.

99. In addition, the valuation used "comparable" publicly traded companies that were different from Suntec in terms of corporate structure, markets or industries served, offering differing services and having differing segments, and/or having different risk profiles and fixed capital needs. Using guideline public companies to determine the fair market value of Suntec had the effect of

improperly increasing the indicated value because the public companies were too different from Suntec to provide a reliable indication of value.

100. The Trustee did not adequately challenge information provided by Suntec management or the valuation techniques of its financial advisor SRR and therefore failed to negotiate for the true, lower fair market value price of Suntec stock as of the date of the ESOP Transaction.

101. The Trustee was rewarded with engagement as the Plan's ongoing trustee by the Board Defendants, who still controlled Suntec, upon completing the ESOP Transaction to their satisfaction.

102. In breach of its duties as fiduciary and trustee under ERISA, the Trustee caused the Plan to engage in prohibited transactions. Based on their respective roles within Suntec, their participation in the ESOP Transaction, and their knowledge from authorizing the Company to participate in the loan component of the ESOP Transaction, the Seller Defendants knowingly participated in the prohibited stock transaction, and the Board Defendants breached their fiduciary duties.

103. The Plan suffered losses as a result of the ERISA-prohibited transactions alleged herein, in an amount to be determined following discovery and expert analysis of non-public information concerning the Trustee's and its financial advisor's valuation and due diligence methodologies, Suntec financials and growth

projections, and other documents and information that were considered or should have been considered in the ESOP Transaction.

104. As a result of the prohibited transactions, Plaintiff and the Plan's participants, whose losses are coterminous with the Plan's, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered monetary losses to their individual Plan accounts.

105. The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of Suntec shares at the time of the ESOP Transaction.

106. The Seller Defendants are liable to the Plan to repay the difference between the price they received and the fair market value of their Suntec shares at the time of the ESOP Transaction.

107. The Board Defendants are liable to the Plan for its losses resulting from breaches of their fiduciary and co-fiduciary duties under ERISA.

108. All consideration paid to the Seller Defendants in connection with the ESOP Transaction is in the current possession of the Seller Defendants and/or traceable.

## CLAIMS FOR RELIEF

## COUNT I

### Causing Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Paredes and PFS

109. Plaintiff incorporates the preceding paragraphs as though set forth herein.

110. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee, Defendants Paredes and PFS, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Suntec stock, with a party in interest, here the Seller Defendants and other selling shareholders, including officers and employees of Suntec and Suntec Concrete, as took place in the ESOP Transaction.

111. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here Suntec, as took place in the ESOP Transaction.

112. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here the Seller Defendants and other selling shareholders, including officers and employees of Suntec and Suntec Concrete, of

any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to the Seller Defendants and other selling shareholders for stock.

113. The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in its capacity as trustee for the Plan.

114. The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

115. ERISA § 409(a), 29 U.S.C. § 1109(a), provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

116. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

117. The Trustee has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

**Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3), Against Wright, Barnier, Hood, Rogers, Lopez, and Martinez**

118. Plaintiff incorporates the preceding paragraphs as though set forth herein.

119. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan.

120. The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

121. As a result of the prohibited stock transaction described above, the Seller Defendants received Plan assets in payment above fair market value for their Suntec stock.

122. The Seller Defendants were directors and/or officers and/or employees of Suntec and Suntec Concrete, were fiduciaries of the Plan, and were

parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

123. The Seller Defendants knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their and other selling shareholders' Suntec stock in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that the Seller Defendants and other selling shareholders included directors, officers, and employees of Suntec and Suntec Concrete, Plan fiduciaries, and 10% or more shareholders, (5) that the Trustee caused the Plan's trust to engage in the stock transaction, and (6) that they and other parties in interest received monetary assets of the Plan in the ESOP Transaction.

124. As parties to and/or beneficiaries of the stock purchase agreement containing the terms of the Plan's stock purchase from the Seller Defendants and countersigned by the Trustee on behalf of the ESOP's trust; as the sellers of stock with an interest in having knowledge of and/or competently negotiating the Transaction; as directors and officers of Suntec, which participated in the loan component of the Transaction with their approval, and which was the sponsor, Named Fiduciary, and fiduciary administrator of the Plan; as Plan fiduciaries; as directors and officers of Suntec and Suntec Concrete, whose team provided company financial information and projections to the buyer side, and which made

other disclosures in response to requests for information that showed the scope of the Trustee's inadequate due diligence, and that the Trustee caused the ESOP's trust to pay above fair market value for Suntec stock; and as directors/officers/owners who knew the control features of the Company and Transaction that caused the Plan to overpay on a control basis and/or due to want of a discount for lack of control, knew about the use of synthetic equity and the Board's authority to issue additional stock after the Transaction, and knew other facts that made management projections unreasonably optimistic, the Seller Defendants were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction; that the Plan paid more than fair market value in the Transaction; and that the Trustee did not adequately investigate and value the stock.

125. Further, it may be inferred that the Seller Defendants had "reasonable knowledge of all relevant facts" because the fair market value standard is that fair market value is the price at which the stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and *both having reasonable knowledge of all relevant facts*. The Seller Defendants had knowledge of the relevant facts, and based upon them caused Suntec to take part in the ESOP Transaction, and took part in the Transaction themselves, directly or indirectly.

126. The Seller Defendants are liable for knowingly participating in violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D), alleged in Count I.

127. The Seller Defendants have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of assets that belong to the Plan.

128. The Seller Defendants are subject to appropriate equitable relief including disgorgement or restitution of any ill-gotten gains they received in connection with the ESOP Transaction, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for Suntec stock as of the date of the Transaction and to give the Plan powers or other consideration for which it paid but did not receive, having the transaction rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT III

### Breach of Fiduciary and Co-Fiduciary Duties Pursuant to 29 U.S.C. §§ 1104, 1105 Against Wright, Barnier, Hood, Rogers, Lopez, Martinez, and Bradley

129. Plaintiff incorporates the preceding paragraphs as though set forth herein.

130. A person with the power to appoint and remove ERISA plan fiduciaries is a fiduciary. A person who appoints and/or has the power to remove a trustee for an ESOP transaction is a fiduciary.

131. An appointing fiduciary must act diligently and prudently in the selection of a trustee and has an ongoing duty to monitor the trustee and provide information to the trustee in the appointing fiduciary's possession that the trustee needs to carry out its duties.

132. The Board of Suntec and Suntec Concrete made the decision to appoint the Trustee to serve as trustee for the Plan. Defendants Wright, Barnier, Hood, Rogers, Lopez, and Bradley were members of the Board at the time of the appointment. They are appointing fiduciaries. On information and belief, Defendant Martinez became a member of the Board after the trustee appointment and six weeks before the ESOP Transaction. Martinez was a fiduciary with the duty to monitor and the power to remove the Trustee during his tenure, and if the Trustee was appointed during his tenure, he was also an appointing fiduciary.

133. The Board Defendants failed to engage in a diligent and prudent process in selecting the Trustee. Relying on CSG, they selected a trustee that allows the dilution of an ESOP's equity to the benefit of selling shareholders; causes the ESOPs it represents to pay control values for companies without

acquiring control; and would engage SRR as its financial advisor, with which CSG had an excessively familiar relationship.

134. The Board Defendants and CSG dangled the prospect of ongoing annual ESOP trustee fees to encourage the Trustee to bless the Transaction on behalf of the ESOP's trust. The Board Defendants benefited from CSG's cozy relationship with SRR and the Trustee and knew they would keep control and knew they would receive synthetic equity and/or actual equity that had a very large dilutive impact on the ESOP's equity.

135. The Board Defendants possessed information that the Trustee needed to fulfill its duties in ensuring the Plan paid no more than fair market value, including that the financial projections provided by the Board Defendants were unreasonably optimistic. The Board Defendants knew or should have known that the Trustee was proceeding with the ESOP Transaction despite inadequate due diligence because the Board Defendants knew that the Trustee had not received all material information regarding the Company.

136. As a result of the prohibited stock transaction described above, the selling shareholders, including members of the Board, received Plan assets in payment above fair market value for their Suntec stock.

137. The Board Defendants breached their fiduciary duties by selecting a trustee to serve their interests and not the Plan's or its participants' and knowingly providing overly optimistic projections to the Trustee.

138. Despite knowing of the facts about these breaches by the Trustee, the Board Defendants did not take any steps to protect the ESOP participants from these breaches and violations, including by stopping or delaying the ESOP Transaction, and removing the Trustee, and/or remedying these breaches.

139. By failing to properly appoint, monitor, and/or take appropriate action against the Trustee, the Board Defendants breached their fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

140. In addition, the Board Defendants breached co-fiduciary duties.

141. As directors and officers of Suntec, which participated in the loan component of the Transaction with their approval, and which was the sponsor, Named Fiduciary, and fiduciary administrator of the Plan; as Plan fiduciaries; as directors and officers of Suntec, whose team provided Company financial information and projections to the buyer side, and which made other disclosures in response to requests for information that showed the scope of the Trustee's inadequate due diligence, and that the Trustee caused the ESOT to pay above fair market value for Suntec stock; as directors/officers/owners who knew the control features of the Company and Transaction that caused the Plan to overpay on a

control basis and/or due to want of a discount for lack of control, knew about the use of synthetic equity and the Board's authority to issue additional stock after the Transaction, and knew other facts that made management projections unreasonably optimistic; with regard to the Seller Defendants on the Board, as parties to and/or beneficiaries of the stock purchase agreement containing the terms of the Plan's stock purchase from the selling shareholders and countersigned by the Trustee on behalf of the ESOP trust; and with regard to the Seller Defendants on the Board, as the sellers of stock with an interest in having knowledge of and/or competently negotiating the Transaction, the Board Defendants were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction; that the Plan paid more than fair market value in the Transaction; and that the Trustee did not adequately investigate and value the stock.

142. Further, it may be inferred that the Seller Defendants, members of the Board, had "reasonable knowledge of all relevant facts" because the fair market value standard is that fair market value is the price at which the stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and *both having reasonable knowledge of all relevant facts*. The Seller Defendants had knowledge of the relevant facts, and based upon them caused Suntec to take part in the ESOP Transaction, and took part in the Transaction themselves, directly or indirectly.

143. The Board Defendants knowingly participated, personally and/or on behalf of Suntec, in the Trustee's prohibited transaction violations because they knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their and other selling shareholders' Suntec stock and taking of a loan from Suntec in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that the Seller Defendants and other selling shareholders included directors, officers, and employees of Suntec and Suntec Concrete, Plan fiduciaries, and 10% or more shareholders, (5) that the Trustee caused the Plan's trust to engage in the stock and loan transactions, (6) that the Seller Defendants and the other selling shareholders received monetary assets of the Plan in the ESOP Transaction, (7) that Suntec was a Plan fiduciary and that Suntec and Suntec Concrete employees were covered by the Plan, (8) that the Trustee would pay a control value even though the ESOP would not get control, (9) that the ESOP's equity would be diluted, and (10) that the Trustee would rely on overly optimistic financial projections that would cause Suntec to be overvalued. This violated ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

144. The Board Defendants knew the Trustee caused a prohibited transaction because they knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their and other selling shareholders' Suntec stock and taking of a loan from Suntec in the ESOP Transaction, (3) that the

Trustee was the fiduciary trustee to the Plan, (4) that the Seller Defendants and other selling shareholders included directors, officers, and employees of Suntec and Suntec Concrete, Plan fiduciaries, and 10% or more shareholders, (5) that the Trustee caused the Plan's trust to engage in the stock and loan transactions, (6) that the Seller Defendants and the other selling shareholders received monetary assets of the Plan in the ESOP Transaction, (7) that Suntec was a Plan fiduciary and that Suntec and Suntec Concrete employees were covered by the Plan, (8) that the Trustee would pay a control value even though the ESOP would not get control, (9) that the ESOP's equity would be diluted, and (10) that the Trustee would rely on overly optimistic financial projections that would cause Suntec to be overvalued. Although the Board Defendants knew or should have known about the Trustee's prohibited transaction violations, they have done nothing to remedy the violations. Thus the Board Defendants breached their duties under ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

145. The Board Defendants are liable under ERISA § 409(a), 29 U.S.C. § 1109(a), to restore all losses to the Plan, to disgorge profits, and are subject to other appropriate equitable or remedial relief.

## CLASS ACTION ALLEGATIONS

146. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class ("Class"):

> All vested participants in the Suntec Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the February 15, 2024 ESOP Transaction or any time thereafter. Excluded from the Class are the shareholders who sold their Suntec Holdings, Inc. ("Suntec") stock to the Plan in the February 15, 2024 ESOP Transaction, directly or indirectly, and their immediate families; the directors and officers of Suntec and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

147. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's 2024 Form 5500 filing reports that as of December 31, 2024, there were 1,505 participants in the Plan.

148. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i. Whether Defendants Paredes and PFS served as trustee in the Plan's acquisition of Suntec stock;

ii. Whether Defendants Paredes and PFS were ERISA fiduciaries of the Plan;

iii. Whether Defendants Paredes and PFS caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Suntec stock from, take loans from, and transfer assets of the Plan to, parties in interest;

iv. Whether Suntec was a party in interest and gave a loan to the Plan;

v. Whether the Seller Defendants and other selling shareholders were parties in interest;

vi. Whether the Seller Defendants knowingly participated in the prohibited stock transactions;

vii. Whether the Board Defendants were fiduciaries for the Plan;

viii. Whether the Board Defendants breached fiduciary and co-fiduciary duties;

ix. The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations; and

x. The appropriate relief for Defendants' violations of ERISA.

149. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid above fair market value and took on an excessive loan for Suntec stock, resulting in his being allocated fewer shares of stock, and he continues to suffer such losses in the present because Defendants failed to correct the overpayment by the Plan.

150. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

151. Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members, and/or because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

152. The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A. Declare that Defendants Paredes and PFS, as Trustee, caused the Plan to engage in prohibited transactions and thereby breached duties under ERISA;

B. Declare that the Seller Defendants knowingly participated in a prohibited transaction with the Plan in violation of ERISA;

C. Declare that the Board Defendants breached fiduciary and co-fiduciary duties;

D. Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

E. Order reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for Suntec stock as of the date of the Transaction, to provide the Plan receives that for which it paid including control of Suntec where it did not receive a discount for lack of control and paid on a control basis and did not obtain control of Suntec, and any other appropriate reformation;

F. Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

G. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court’s declaration;

H. Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the

Plan's overpayment on company stock and Defendants' breaches of ERISA;

I. Remove the Trustee as Plan fiduciary, enjoin it from acting as a fiduciary for any employee benefit plan that covers or includes any Suntec employees or members of the Class, and appoint an independent fiduciary in place of the Trustee;

J. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K. Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

L. Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan's and Plan participants' ability to recover the same;

M. Order Defendants to pay prejudgment and post-judgment interest;

N. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative, and his counsel as class counsel; and

O. Award such other and further relief as the Court deems equitable and just.

Dated: July 10, 2026

Respectfully submitted

By: */s/ Don Bivens*

Don Bivens (AZ Bar No. 005134)
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
Email: don@donbivens.com

Gregory Y. Porter (*pro hac vice to be filed*)
Ryan T. Jenny (*pro hac vice to be filed*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: gporter@baileyglasser.com
Email: rjenny@baileyglasser.com

Patrick O. Muench (*pro hac vice to be filed*)
**BAILEY & GLASSER LLP**
318 W. Adams Street, Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*